19.     On July 28, 2014, Mr. Kabenga returned to the United States and sought admission at John F. Kennedy Airport in New York. He believed that he was permitted to return to the United States one year after his removal order. *See* Record of Sworn Statement at 4 (Ex. C). Mr. Kabenga was still in possession of his Permanent Resident Card and presented it to the CBP officer at the airport. The CBP officer interviewed Mr. Kabenga and concluded that he was no longer an LPR. The CBP officer ordered Mr. Kabenga removed pursuant to 8 U.S.C. § 1225(b)(1), but referred his case to an Immigration Judge pursuant to 8 U.S.C. § 1225(b)(1)(C) to review his claim that he was still an LPR. *See* Notice of Referral to Immigration Judge (Ex. A); Notice and Order of Expedited Removal (Ex. B).

20.     A hearing was held in Mr. Kabenga's case on November 10, 2014 before the Varick Street Immigration Court. Prior to the hearing, Mr. Kabenga had requested, through counsel, that the hearing date be adjourned to enable him to present further briefing and documentation in support of his claim that he is an LPR on the grounds that his status as such was not validly terminated by the 2012 removal order. Immigration Judge Alan Page denied that request, finding that he lacked jurisdiction to consider the validity of the 2012 removal order. Mr. Kabenga now seeks review of the expedited removal order pursuant to 8 U.S.C. § 1252(e)(2)(C). That provision states, in pertinent part, that "[j]udicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of . . . (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, . . . such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title."

## CLAIM

21. The expedited removal order against Mr. Kabenga is unlawful and should be vacated. Mr. Kabenga may not legally be removed from the United States because he retains his status as an LPR.

22. According to 8 C.F.R. § 1.2, one's status as an LPR "terminates upon entry of a final administrative order of exclusion, deportation, or removal." If a removal order is obtained by means of a gross miscarriage of justice, the removal order is invalid and must be deemed a legal nullity. *See Matter of Malone*, 11 I.&.N. Dec. 730, 731 (BIA 1966). A gross miscarriage of justice occurs when a removal order is "not in accord with the law as interpreted" at the time the order was issued. *Id.* at 732.

23. The 2012 removal order against Mr. Kabenga was clearly not in accord with the governing law at the time. As noted above, the IJ and BIA ordered Mr. Kabenga removed based on the conclusion that his conviction for Aggravated Assault of a Public Servant under Texas Penal Code § 22.02(b)(2) is a crime of violence aggravated felony, as defined by 8 U.S.C. § 1101(a)(43)(f). That provision defines a "crime of violence" by reference to 18 U.S.C. § 16, which states that the term "crime of violence" means:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The BIA in Mr. Kabenga's case held that his offense is a crime of violence pursuant to 18 U.S.C. § 16(b). *See* BIA Dec. at 2 (Ex. E). This holding was contrary to binding Fifth Circuit precedent

at the time. It was also contrary to precedent decisions by the vast majority of other circuit courts.

24. As noted above, Mr. Kabenga was convicted of Texas Penal Code § 22.02(b)(2) (2002). Section 22.02 states, in pertinent part:

> (a) A person commits an offense if the person commits assault as defined in Section 22.01 and the person:
>
> (1) causes serious bodily injury to another, including the person's spouse; or
>
> (2) uses or exhibits a deadly weapon during the commission of the assault.
>
> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if the offense is committed:
>
> [...]
>
> (2) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant; . . . .

Thus, among the necessary elements for a conviction under § 22.02(b)(2) are: (1) committing assault as defined in Section 22.01; and (2) either causing serious bodily injury, or using or exhibiting a deadly weapon during the commission of the assault.

25. Texas Penal Code § 22.01 (2002) states, in pertinent part:

> (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

26.     Neither the Immigration Court nor the BIA decision in Mr. Kabenga's case analyzed his conviction beyond determining that it was for violating § 22.02(b)(2).[8] There is no discussion or indication of which subsection of § 22.02(a) or § 22.01 he was found to have violated. As is clear from those statutes, it is possible to violate § 22.02(b)(2) in a number of ways, including by means of reckless, rather than intentional, conduct. Under Fifth Circuit precedent at the time of Mr. Kabenga's 2012 removal proceeding, an offense that could be based on a reckless *mens rea* could not be a crime of violence. In *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), the Fifth Circuit held that:

> [T]he "substantial risk that physical force ... may be used" language in [8 U.S.C.] section 16(b) refers only to those offenses in which there is a substantial likelihood that the perpetrator will *intentionally* employ physical force. The criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event.

243 F.3d at 926 (emphasis added). *See also Galvan-Escobar v. Gonzales*, 151 Fed. Appx. 327 (5th Cir. 2005) (unpublished) ("Without question, the decision in *Chapa-Garza* prospectively binds the decisions of IJs and the BIA in future deportation hearings and those currently pending appeal.").

27.     Moreover, at the time of Mr. Kabenga's removal order, the Fifth Circuit's view on this issue was shared by virtually every other circuit court. *See U.S. v. Castleman*, 134 S. Ct. 1405, 1414 n.8 (2014) (noting that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to support a crime of violence aggravated felony) (citing, *inter*

---

[8] As recognized by the BIA, the determination of whether Mr. Kabenga's conviction is an aggravated felony must be made by applying the "categorical approach." *See* BIA Dec. at 1, attached as Ex. E to Meselson Decl. Under Fifth Circuit law at the time of the 2012 removal proceedings, the categorical approach, required the court to consider "whether the elements of the state statute are analogous to a federal felony instead of looking at the underlying facts of the crime." *Moncrieffe v. Holder*, 662 F.3d 387, 391 (5th Cir. 2011) (citation omitted).

*alia, Chapa–Garza*, 243 F.3d at 926) (further citations omitted). Neither the IJ nor the BIA cited *Chapa–Garza* or its progeny in holding that Mr. Kabenga's conviction was a crime of violence, nor did they recognize that the statute under which he was convicted may be satisfied by a reckless mental state. In fact, as noted above, neither the BIA nor the IJ cited any authority whatsoever for the conclusion that the statute of conviction is a crime of violence.

28. The BIA's and IJ's failure to follow binding precedent at the time of Mr. Kabenga's removal proceeding constitutes a gross miscarriage of justice. That miscarriage of justice is exacerbated by the fact that Mr. Kabenga proceeded *pro se* before both the IJ and the BIA. Immigration Judges are required by regulation to "inform the alien of his or her apparent eligibility to apply for" certain forms of relief from removal, including cancellation of removal. At the time of the 2012 removal proceedings, Mr. Kabenga was eligible for cancellation of removal, but the IJ and BIA apparently assumed that he was not eligible for that form of relief based on the erroneous and unsupported conclusion that he had been convicted of an aggravated felony. The U.S. Court of Appeals for the Second Circuit has explained that:

> Given that IJs have a duty to develop the administrative record, and that many aliens are uncounselled, our removal system relies on IJs *to explain the law accurately* to *pro se* aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal.

*U.S. v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004) (emphasis added). *See also U.S. v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001) ("When the record before the Immigration Judge raises a reasonable possibility of relief from deportation under this provision [212(h)], it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing.").

## REQUEST FOR RELIEF

WHEREFORE, Petitioner hereby requests this Court to grant the following relief:

(1) An order declaring that the 2014 expedited removal order against Mr. Kabenga is unlawful and has no legal effect;

(2) An order declaring that Mr. Kabenga retains his status as a lawful permanent resident;

(3) An order declaring that the 2012 removal order against Mr. Kabenga is null and void;

(4) An order enjoining the respondents from finding that Mr. Kabenga is inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I);

(5) An order requiring that Mr. Kabenga be provided a hearing in accordance with 8 U.S.C. § 1229a (*see* 8 U.S.C. § 1252(e)(4));

(5) An award of attorneys' fees and costs; and

(6) Such other relief as may be just and reasonable.

Dated: November 13, 2014

Respectfully,

THE LEGAL AID SOCIETY
Scott A. Rosenberg, General Counsel
Adriene Holder, Attorney-in-Charge, Civil Practice
Jojo Annobil, Attorney-in-Charge, Immigration Law Unit
Rex Chen, Supervising Attorney, Immigration Law Unit
Amy Meselson, Of Counsel
199 Water Street
New York, NY 10038

By:

Amy V. Meselson
The Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
Tel: 212-577-3347
Fax: 646-616-4581

E-mail: <u>AVMeselson@legal-aid.org</u>

ATTORNEY FOR PETITIONER

## VERIFICATION

I, Amy V. Meselson, state under penalty of perjury, that the contents of the foregoing Petition for a Writ of Habeas Corpus, filed on behalf of Musafiri G. Kabenga, are, on information and belief, true and correct to the best of my knowledge.

Dated: November 13, 2014

*[signature]*
Amy V. Meselson