**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

MUSAFIRI G. KABENGA,

          **Petitioner,**

   - against -

ERIC H. HOLDER, Jr., et al.,

          **Respondents.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/2/15_

**OPINION AND ORDER**

**14-CV-9084 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION AND BACKGROUND

Musafiri Kabenga is a Congolese national who first came to the United States in 1985.[1]  In 1993, he became a lawful permanent resident ("LPR") after marrying a United States citizen and successfully petitioning for a status adjustment.[2]  In 2012, Kabenga was removed from the United States on the basis of a 2002 guilty plea for aggravated assault under Texas state law.[3]

On July 28, 2014, Kabenga returned to the United States and sought

---

[1]   *See* Petition for Writ of Habeas Corpus ("Pet."), ¶ 2.  Throughout this Opinion, facts are drawn from Kabenga's habeas petition.

[2]   *See id.* ¶ 13.

[3]   *See id.* ¶¶ 14-17.

admission at John F. Kennedy Airport ("JFK"), believing — mistakenly — that he was permitted to return to the United States one year after his removal order.[4] Upon arrival at JFK, Kabenga was placed into "expedited removal" proceedings, and his case was referred to immigration court, where Kabenga sought to challenge the validity of his 2012 removal order.[5]  On November 10, 2014, the immigration court held that it lacked jurisdiction to consider the validity of the 2012 removal order; it was only authorized to examine whether the order had, in fact, issued.[6] Finding that it had, the immigration judge affirmed the July 2014 expedited removal order.[7]

Kabenga has filed a petition for Writ of Habeas Corpus before this Court, advancing the same argument as he advanced before the immigration judge. Kabenga believes that his 2012 removal order was legally deficient.  In essence, he argues that under governing Fifth Circuit law, his 2002 offense was not a "crime of violence," as the immigration court and Board of Immigration Appeals ("BIA")

---

[4]    *See id.* ¶ 19.

[5]    *See id.* ¶ 20.

[6]    *See id.*

[7]    *See id.  See also* 11/10/14 Order of Immigration Judge Alan L. Page, Exhibit ("Ex.") F to Pet.

held at the time.[8]  If so, Kabenga maintains that the order "is invalid and must be deemed a legal nullity,"[9] which would mean that his LPR status was never properly revoked, and that he remains an LPR to this day — making removal, expedited or not, improper.

At this juncture, the question before this Court is whether Kabenga's expedited removal should be stayed pending the resolution of his petition for a Writ of Habeas Corpus.  That question turns primarily on a threshold jurisdictional issue:  may this Court, pursuant to its federal habeas jurisdiction, examine the legal sufficiency of Kabenga's 2012 removal in order to determine whether he is still an LPR?  Because I conclude that the answer is yes, and because the rest of the stay factors tilt in Kabenga's favor, his motion is GRANTED.

## II.  APPLICABLE LAW

### A.  Stays of Removal

Stays of removal are governed by a four-factor test.  Courts must consider:  (1) whether the applicant has shown a likelihood of success on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in

---

[8]  *See* Pet. ¶¶ 23-37.

[9]  *Id.* ¶ 22.

the proceeding, and (4) where the public interest lies.[10]  Of these factors, the first two are "the most critical."[11]

### B.    Jurisdiction to Review Expedited Removal Orders

Expedited removal orders are subject to circumscribed habeas review.[12]  Section 1252(e)(2) of the Immigration and Nationality Act ("INA") limits federal habeas jurisdiction to three questions.  *First*, "is [the petitioner] an alien"?[13]  *Second*, has the petitioner "[been] ordered removed"?[14]  *Third*, can petitioner "prove by a preponderance of the evidence that [he] is an LPR . . . a refugee . . . or [an asylum grantee]"?[15]

In addressing these three questions, "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner [and] [t]here shall be no review of whether the alien is actually

---

[10]    *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

[11]    *Id.*

[12]    *See* 8 U.S.C. § 1252(e)(2)(A) ("no court shall have jurisdiction to review . . . except as provided in subsection (e) of this section, any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of [an expedited removal order].").

[13]    *Id.* § 1252(e)(2)(A).

[14]    *Id.* § 1252(e)(2)(B).

[15]    *Id.* § 1252(e)(2)(C).

inadmissible or entitled to any relief from removal."[16]  Put otherwise, federal courts

are not authorized to decide whether an alien *should be* admitted to the United

States.  They are only authorized to decide whether an alien in fact *has been*

admitted to the United States.  As the Ninth Circuit has explained, "[section]

1252(e) expressly limit[s] the scope of [judicial] review to habeas petitions

alleging that the petitioner *is not an alien* or was never subject to an expedited

removal order."[17]

## III.   DISCUSSION

### A.   Federal Habeas Jurisdiction

Before reaching the substance of Kabenga's stay motion, this Court

must consider whether it has jurisdiction.  In its motion to dismiss, the Government

argues that under section 1252(e)(2) of the INA, federal habeas review is limited to

"strictly ministerial" questions about an alien's status,[18] because the statute's plain

language precludes courts from examining whether "'an alien is *actually*

---

[16]    *Id.* § 1252(e)(5).

[17]    *Garcia de Rincon v. Department of Homeland Sec.*, 539 F.3d 1133,
1139 (9th Cir. 2008) (emphasis added). *Accord Shunaula v. Holder*, 732 F.3d 143,
147 (2d Cir. 2013) (agreeing with the Ninth Circuit).

[18]    Memorandum in Opposition to Petitioner's Motion for Stay of
Removal ("Opp. Mem."), at 6.

inadmissible or entitled to any relief from removal.'"[19]

For support, the Government relies on a number of appellate cases — including one from the Second Circuit[20] — holding that federal courts lack jurisdiction over appeals of expedited removal orders that seek to challenge the validity of previous status determinations. For the reasons explained in my December 18, 2014 order, however, none of the cases cited by the Government are factually on-point.[21] In each of those cases, the petitioner had never been admitted to the United States and sought habeas review of an expedited removal order to argue — in effect — that he should have been admitted. In none of those cases was the petitioner *ever* an LPR. Here, Kabenga was admitted to the United States in 1993 — when he became an LPR — and he believes that his LPR status was never properly terminated. This would place Kabenga's petition squarely within the jurisdictional grant of section 1252(e)(2)(C).[22]

---

[19]   *Id.* at 7 (emphasis in original) (quoting 8 U.S.C. § 1252(e)(5)).

[20]   *See Shunuala*, 732 F.3d at 145-47.

[21]   *See* 12/18/14 Order (Dkt. No. 10).

[22]   In fact, one of the cases that the Government invokes for support — *Li v. Eddy* — contemplates this very distinction. There, the Ninth Circuit held that it (as well as the district court) lacked jurisdiction to hear a challenge to an expedited removal order from an alien who had never been admitted to the United States. In so holding, however, the court "emphasize[d] that this case *does not implicate* the jurisdictional issues that would be raised had Li been lawfully admitted to this

On December 24, 2014, the Government filed a sur-reply — at the Court's request — to address the factual discrepancies between Kabenga's case and those cited in the Government's initial opposition papers.[23] The upshot of the Government's position is that although Kabenga is, indeed, "argu[ing] 'that he is a lawful permanent resident,'"[24] his "belief about his status, and his disagreement with the BIA's 2012 decision, is irrelevant to the [habeas review] permitted by [section 1252(e)]."[25] By "render[ing] Kabenga's removal order final," the 2012 removal order "terminated [his] LPR status,"[26] which — according to the Government — ends the inquiry, because this Court is jurisdictionally barred from addressing whether the immigration authorities *should have* terminated Kabenga's LPR status.  Put otherwise, because there is no dispute that the 2012 removal order

---

country."  *Li v. Eddy*, 259 F.3d 1131, 1135 (9th Cir. 2001), *vacated on reh'g as moot*, 324 F.3d 1109 (9th Cir. 2003) (emphasis added).  *Accord* Sur-Reply in Further Support of the Government's Motion to Dismiss Kabenga's Habeas Petition ("Sur-Reply"), at 2 n.1 (explaining that "although Li was vacated on mootness grounds, 'the case [remains] analytically sound'") (quoting *Garcia de Rincon*, 539 F.3d at 1141 n.4).  In other words, the Ninth Circuit explicitly *refrained from* extending section 1252's jurisdictional bar to petitions brought by aliens like Kabenga.

[23]     *See* Sur-Reply.

[24]     *Id.* at 1 (quoting 12/18/14 Order) (emphasis omitted).

[25]     *Id.*

[26]     *Id.*

was issued, that it was upheld in immigration court, and that it led to Kabenga's

removal, the Government believes that the "ministerial" review allowed by section

1252(e) is easily exhausted.  Kabenga's LPR status was terminated in 2012.

Therefore, his case falls outside the narrow jurisdictional grant of section

1252(e)(2).

        The Government is correct that "Kabenga's belief about his status,

and his disagreement with the BIA's 2012 decision, is irrelevant to the [habeas

review] permitted by [section 1252(e)]."[27]  That a petitioner wishes for the court to

hear his claim does not create jurisdiction where none would otherwise lie.  But

this misses the point.  What distinguishes Kabenga's petition is not that he believes

the immigration authorities mishandled his case — that, presumably, was also true

in the appellate cases cited by Government.  What distinguishes Kabenga's petition

is that he was previously admitted to the United States as an LPR, which means

that if his merits argument succeeds, the result will be that he *still is* an LPR.  And

this is among the questions that section 1252(e) explicitly authorizes federal courts

to review.[28]

---

[27]    *Id.*

[28]    It is true — as the Government appears to suggest — that section
1252(e)(2)(C) is difficult to reconcile with section 1252(e)(5).  Whereas section
1252(e)(2)(C) permits courts to determine whether an alien "is an LPR . . . a
refugee . . . or [an asylum grantee]," section 1252(e)(5) precludes courts from

Ultimately, the Government has pointed to no case — nor have I have

been able to locate any — in which an alien who once had LPR status has

challenged expedited removal on the theory that he still is an LPR.[29] As the

---

examining whether an alien "actually *is admissible*." How a court is supposed to
perform the first operation — which requires assessing the *basis* of an alien's
admissibility — while avoiding any inquiry into an alien's actual admissibility is
unclear. What *is* clear is that ambiguities in the immigration laws should be
construed (1) in favor of aliens, and (2) in favor of avoiding potential constitutional
problems. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (explaining that
"lingering ambiguities in deportation statutes" should be construed "in favor of the
alien"); *INS v. St. Cyr*, 533 U.S. 289, 298-314 (2001) (explaining that the
Suspension Clause applies to deportation decisions, and that attempts to limit the
scope of habeas jurisdiction in the removal context therefore trigger constitutional
scrutiny). Here, both principles support the same result: that section 1252(e)
permits review of Kabenga's petition.

[29]      The most analogous case I found — after reviewing *every* Circuit
Court case on point and nearly one hundred trial court decisions — is *Al-Khedri v.
Sedlock*, in which the petitioner had been a *conditional* LPR. *See* No. 09 Civ.
6843, 2009 WL 3380681 (N.D. Ill. Oct. 20, 2009). While his application to
become a *permanent* LPR was pending, he voluntarily traveled outside the country.
While abroad, he learned that his petition for permanent LPR status had been
denied. When he sought to reenter the United States, an expedited removal order
was issued. He filed a habeas petition challenging this order, claiming that he still
had *conditional* LPR status because he was appealing the denial of his petition for
permanent LPR status. The district court held that because an alien's *conditional*
LPR status is revoked as of the date of the denial of his petition to remove
conditions and become a permanent LPR, he cannot be considered an LPR while
petitioning for review of the revocation of status. *See id.* at *3 (citing 8 U.S.C. §
1186a(c)(3)(C) (applying solely to *conditional* LPR status)).  Accordingly, the
court decided it lacked jurisdiction under 1252(e)(2)( C) to adjudicate the habeas
petition.
          This case is clearly distinguishable from Kabenga's.  Kabenga had
LPR status for twenty years. Unlike Al-Khedri his argument is *not* that the
removal decision lacks finality because it is being appealed — and of course he

appellate case law cited by the Government makes clear, the typical case is one in which a petitioner has never been admitted to the United States, and is attempting to use habeas review as a means of securing a favorable status determination by a federal judge.[30] That is exactly what section 1252(e) disallows. But it is also quite different from the relief sought here. For the government to prevent an alien from

---

was not a *conditional* LPR. His argument is that the removal decision was erroneous and therefore he is still an LPR. Even if the case were not distinguishable, it bears noting that the *Al-Khedri* court in effect exercised jurisdiction in determining that as a matter of substantive law Al-Khedri could not establish LPR status because his *conditional* status was lost at the time of the decision denying his petition. The court reasoned that because there was "no way Al-Kehdri [could] prove that he is currently a lawful permanent resident," the court "[could not] exercise jurisdiction under [section] 1252(e)(2)(C)." *Id.* But by examining the substance of Al-Kehdri's argument *at all*, the court demonstrated a willingness — sub silentio — to accept the proposition that section 1252(e)(2)(C) authorizes federal courts to review claims that an alien facing expedited removal is, in fact, an LPR. Otherwise, there would have been no reason — indeed, no authority — for the court to reach the substance of Al-Kehdri's argument that he retained conditional LPR status pending appellate review of the denial of his petition for permanent LPR status.

[30]     That Kabenga's case differs so plainly from other cases concerning section 1252(e) also disposes of the Government's alternative argument that reviewing Kabenga's petition would "enormous[ly]" undermine the jurisdiction-stripping provisions of the INA — provisions that Congress crafted to mitigate the administrative difficulty of removal. Rep. at 3. This argument is not convincing. Petitions like Kabenga's — where an alien claims that his status as an LPR was never properly revoked — are the exception, not the norm. The norm are petitions like those considered in the appellate case law, where an alien who has *never* been admitted to the United States tries to use habeas review to secure admission. Exercising jurisdiction over Kabenga's petition will in no way hamper the ability of immigration officials to efficiently dispose of garden variety challenges to expedited removal.

-10-

entering the United States, or to stop an alien from living here illegally, is different than deciding someone may no longer set foot in a country where he legally resided. This is Kabenga's home. His wife and children are in the United States. Before his removal in 2012, he lived here for almost three decades — two decades as an LPR. Put simply, unlike other petitioners in cases about the reach of federal habeas jurisdiction under section 1252(e), Kabenga does not just yearn for status in the United States — he had LPR status here for twenty years! And he argues that his status was never properly revoked. Section 1252(e)(2)(C) permits the Court to examine the merits of that claim.

The Government admits, as it must, that section 1252(e)(2)(C) provides for *some* review of habeas petitions that maintain that the alien facing expedited removal is, in fact, an LPR. But the Government offers no theory for limiting the set of petitions to which the section applies — or for explaining why Kabenga's petition falls outside its bounds. According to the Government, "[section] 1252(e)(2)(C) clearly applies to a person, unlike Kabenga, who could show the district court 'evidence' — most likely, a green card — of his or her unterminated LPR status."[31] There is nothing special, however, about "show[ing] the [] court . . . a green card." That is simply one *means* of demonstrating that an

---

[31]     Sur-Reply at 1.

alien is, in fact, an LPR.  Kabenga invokes a different means — a legal argument
about the misapplication of the categorical approach to his 2002 conviction — but
his claim has the same effect.  The difference between "show[ing] the [] court" a
green card, and "show[ing] the [] court" a set of statutory materials, cannot be the
basis of a jurisdictional distinction.  The Government has offered no authority to
support the implicit premise of its argument:  that the form of evidence used to
*answer* a given question — in this case, whether an alien is an LPR — determines
if the Court has authority to entertain the question.  This lack of authority is not
surprising.  Whether a court is authorized, in the first instance, to hear a given case
cannot depend on the evaluation of evidence yet to be submitted.

          In short, section 1252(e)(2)(C) does not grant the court power to
review claims that a petitioner "is an alien lawfully admitted for permanent
residence" based on specific types of proof.   Like any jurisdictional statute,
section 1252(e)(2)(C) grants the court power to review such claims, *period*.
Kabenga believes that the 2012 removal order is, in effect, a "legal nullity" because
it misapplied clearly established law, giving rise to a "gross miscarriage of
justice."[32]  That argument may or may not prevail.  But Section 1252 does not
prevent the Court from considering it.

----

[32]       Petitioner's Reply to Respondent's Motion to Dismiss ("Rep."), at 5.

### B.      Likelihood of Success on the Merits

Having determined that jurisdiction lies, the Court must now address whether Kabenga is entitled to a stay pending a decision on his habeas petition. The first factor is whether Kabenga is likely to succeed on the merits. That depends on two questions. *First*, did the 2012 order, when it categorized Kabenga as removable for committing a "crime of violence," misapply existing law? *Second*, did this misapplication of law — assuming it occurred — rise to the level of a "gross miscarriage of justice," sufficient to render the order a "legal nullity"?[33]

Kabenga's petition succeeds on both fronts. *First*, Kabenga has made a prima facie of showing of legal error. He has cited to a number of cases, across multiple jurisdictions, suggesting that the offense he was convicted of in 2002 is not categorically a "crime of violence."[34] If so, it is unlikely that the order can withstand scrutiny under the so-called "categorical approach." *Second*, given the nature of the legal error involved — a categorical error — there is good reason, on the face of it, to think that it constituted a "gross miscarriage of justice."[35] And if Kabenga is interpreting the relevant BIA decisions correctly — a proposition that

---

[33]      *See* Pet. ¶ 22. *See also* Rep. at 5.

[34]      *See* Pet. ¶ 23.

[35]      *Id.* ¶¶ 22, 28.

the Government has not contested thus far — a "gross miscarriage of justice" would be sufficient to render the 2012 removal order "null[]."[36]

### C.    The Other Factors

The Government has made no attempt to argue that the third and fourth factors — hardship to the counter-party (which in this case would be the Government itself), and considerations of public interest — weigh against granting a stay.  Instead, it has focused on the "irreparable harm" prong.  According to the Government, "Kabenga has not shown that his physical presence is necessary in this proceeding," which means that if Kabenga is removed between now and when the Court rules on his habeas petition, he will still be able to participate in the case.[37]  Furthermore, "even if Kabenga prevails before this Court and his case is remanded for further immigration proceedings, the policy directive issued by ICE provides that '[it] will facilitate the alien's return to the United States if either the court's decision restores the alien to LPR status, or the alien's presence is necessary for continued [] proceedings.'"[38]

---

[36]    *Id.* ¶ 22.

[37]    Opp. Mem. at 13.

[38]    *Id.* (quoting 4/24/12 Letter from Michael R. Dreeban, Deputy Solictor General, to Hon. William K. Suter, Clerk, Supreme Court of the United States ("4/2/14 Letter"), Ex. G to Pet., at App'x B).

In *Nken v. Holder*, the Supreme Court held that deportation is not a "categorically irreparable" harm.[39]  In so holding, however, it was relying on the Government's representation (in its breifings) that individuals "who prevail [on a habeas petition] can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."[40]  Sadly, this promise has proved illusory.  After *Nken* was issued, the Solicitor General's office sent the Supreme Court a letter,[41] clarifying that the facilitation of an alien's return is contingent on ICE protocol, which means, among other things, that the Government will not "necessarily [] fund[] [an] alien's travel via commercial carrier to the United States."[42]

This seemingly minor caveat has significant repercussions for a petitioner — like Kabenga — who lacks the means to fund his return to the United States.  Just last month, Judge Jed Rakoff of this District expressed concern about the Government's policy of selectively financing post-removal travel.  The policy is "troubling," Judge Rakoff wrote, because for "many [indigent] aliens, the

---

[39]     556 U.S. at 435.

[40]     *Id.* (citing to the Government's brief).

[41]     *See* 4/24/12 Letter.

[42]     ICE Regulation on Facilitating the Return to the United States of Certain Lawfully Removed Aliens ("ICE Reg."), Ex. H to Pet., at 1-2.

financial burden of removal may, as a practical matter, preclude effective relief."[43] It is indeed troubling. What would Kabenga do in the event that his habeas petition is granted, and his case is remanded back to immigration court — but ICE determines (for reasons left unexplained in its regulations) that Kabenga's "presence is [not] necessary for continued administrative proceedings"[44]? I decline to take that risk.

## IV.  CONCLUSION

For the reasons set forth above, Kabenga's motion for a stay of removal is GRANTED. The Government is directed to submit a supplemental brief, of no more than fifteen pages, by January 19, 2015. Petitioner is directed to submit a supplemental reply, of no more than ten pages, by February 2, 2015. Both sets of papers should be addressed to the merits of Kabenga's habeas petition.

---

[43]    *National Immigration Project v. Department of Homeland Sec.*, No. 11 Civ. 3235, 2014 WL 6850977, at *5 (S.D.N.Y. Dec. 3, 2014).

[44]    ICE Reg. at 1.

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 2, 2015

-17-

## -Appearances-

**For Petitioner:**

Amy V. Meselson, Esq.
Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
(212) 577-3347

**For Respondents:**

Shane P. Cargo
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2711