**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------- X

MUSAFIRI G. KABENGA,

                Petitioner,

    - against -

ERIC H. HOLDER, Jr., et al.,

             Respondents.

----------------------------------------------------- X

**OPINION AND ORDER**

**14 Civ. 9084 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On January 2, 2015, I ruled that this Court has jurisdiction to entertain Musafiri Kabenga's petition for a Writ of Habeas Corpus.[1]  In that petition, Kabenga challenges his 2012 removal on the theory that the Board of Immigration Appeals ("BIA") misapplied clearly established law, resulting in a "gross miscarriage of justice."[2]  If such a miscarriage occurred, Kabenga argues that his 2012 removal should be vacated, and his status as a lawful permanent resident ("LPR") of the United States — which he enjoyed before being removed — should

---

[1]    *See Kabenga v. Holder*, No. 14 Civ. 9084, 2015 WL 64776 (S.D.N.Y. Jan. 2, 2015).

[2]    *See* Petition for Writ of Habeas Corpus ("Pet."), ¶ 2.

be restored.  For the reasons set forth below, Kabenga's habeas petition is

GRANTED.

## II.    BACKGROUND

In 2012 — after nearly two decades as an LPR — Kabenga was

ordered removable from the United States for committing a "crime of violence."[3]

This determination was upheld by the BIA,[4] and in 2013, Kabenga was removed to

the Democratic Republic of Congo.[5]

The conviction underpinning Kabenga's removal — the alleged

"crime of violence" — occurred in Dallas, Texas in 2002.[6]  At the time, Kabenga

was working as a taxi driver.[7]  One night, while Kabenga was waiting outside of a

night club to pick up a customer who had booked his service, Hector Roa, the

security guard at the nightclub who was also an off-duty sergeant with the Dallas

---

[3]    *See* Decision and Order of the Immigration Judge in the Matter of Musafiri George Kabenga, Exhibit ("Ex.") J to Government's Return to Habeas Petition ("Ret.").  *See also* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1101(a)(43)(F) (defining "crime[s] of violence" as aggravated felonies).

[4]    *See* Board of Immigration Decision in re: Musafiri George Kabenga ("BIA Op."), Ex. K to Ret., at 1 ("The respondent's [conviction] qualifies categorically as being for an aggravated felony crime of violence.").

[5]    *See* Pet. ¶ 17.

[6]    *See id.* ¶ 14.

[7]    *See id.*

Police Department, told Kabenga to move his car.[8]  After some back-and-forth, Kabenga attempted to comply with Roa's order by moving, in reverse, out of his parking space.  In so doing, Kabenga struck Roa with his car, leading Roa to arrest him.[9]  Kabenga was charged with — and pled guilty to — aggravated assault of a public official.[10]  This conviction became the predicate of Kabenga's 2012 removal.

Numerous threshold issues are not in dispute.  *First*, Kabenga's 2002 conviction arose under section 22.02(b)(2) of the Texas Penal Code, which requires, *inter alia*, "intentionally, knowingly, or recklessly caus[ing] bodily injury to another [person]."[11]  *Second*, the legal theory behind Kabenga's 2012 removal was that his 2002 conviction constituted a "crime of violence," under the federal

---

[8]     *See id.*

[9]     *See id.*

[10]     *See id.* ¶ 15.  *See also* Bill of Indictment, Ex. A to Ret.; Plea Agreement, Ex. D to Ret.

[11]     *See* Texas Penal Code § 22.01(a)(1) (which is incorporated into section 22.02(b) — the section under which Kabenga was convicted — by reference).  *See also id.* § 22.02(a) ("A person commits an [aggravated assault] if the person commits assault as defined in § 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault.").  Here, the "deadly weapon" in question was Kabenga's car.  *See* Bill of Indictment ("[D]efendant did use and exhibit a deadly weapon, to wit: a motor vehicle, during the commission of the assault.").

definition.[12]  *Third*, Kabenga has pointed to case law — which the Government has not contested — establishing that if the 2002 conviction was *not* a crime of violence, his removal was a "legal nullity" and must be vacated.[13]  *Fourth*, this question must be resolved under the law of the jurisdiction where Kabenga's removal occurred — the Fifth Circuit — as of 2012, when his removal was being adjudicated.

The remaining dispute, then, is whether Kabenga's 2012 conviction was, in fact, a "crime of violence."  On this point, the parties disagree both as to the proper legal framework — whether the analysis is driven by the "categorical approach," or instead by the "modified categorical approach" — as well as the correct result.

## III.   APPLICABLE LAW

### A.   Crimes of Violence

Under federal law, a "crime of violence" is defined in two ways. *First*, a crime of violence can refer to "an offense that has as an element the use,

---

[12]     BIA Op. at 1 ("The respondent's [conviction] qualifies categorically as being for an aggravated felony crime of violence . . . .").

[13]     *See Matter of Malone*, 11 I. & N. Dec.  730, 731-32 (BIA 1966) (explaining that adverse status determinations that are "not in accord with the law as interpreted at [the] time" constitute a "gross miscarriage of justice" and must be treated as "legal nullit[ies]").

attempted use, or threatened use of physical force against the person or property of

another."[14]  *Second*, a crime of violence can refer to "any other offense that is a

felony and that, by its nature, involves a substantial risk that physical force against

the person or property of another may be used in the course of committing the

offense."[15]  Both definitions incorporate "using force" as an element of the offense.

     In *Leocal v. Ashcroft*,[16] the Supreme Court held that an alien's

conviction under Florida law for "causing ... [s]erious bodily injury to another"

while driving under the influence ("DUI") was not a "crime of violence" for

federal immigration purposes.[17]  This was so, the Court reasoned, because the

federal definition of "crime of violence" carries an implicit *mens rea* requirement.

Under an "ordinary" construction of the phrase "use physical force,"[18] for someone

to "use [] physical force against the person or property of another" requires that he

have a "higher degree of intent than negligent or merely accidental conduct."[19]

Because the Florida statute in question did not specify the level of *mens rea*

---

[14]     8 U.S.C. § 16(a).

[15]     *Id.* § 16(b).

[16]     543 U.S. 1 (2004).

[17]     Florida Stat. § 316.193(3)(c)(2).

[18]     *Leocal*, 543 U.S. at 11.

[19]     *Id.*

necessary to sustain a conviction, it could not qualify as a crime of violence.  In reaching this conclusion, the *Leocal* Court explicitly reserved the question — which is the question presented here — of "whether a state or federal offense that requires proof of reckless[ness] . . . qualifies as a crime of violence."[20]

### B.    The Categorical Approach

The analysis in *Leocal* tacitly affirmed what other Supreme Court opinions (and lower court opinions) have made explicit: "[w]hen the Government alleges that a state conviction qualifies as an 'aggravated felony' under the [Immigration and Nationality Act ("INA")], [courts] generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA."[21]  Under the "categorical approach," the question is not what the convicted person actually *did*, but instead "whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony."[22]  Put otherwise, the question is

---

[20]    *Id.* at 13.

[21]    *Moncrieffe v. Holder*, 133 S.Ct. 1678, 1685 (2013).  *Accord United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001) (en banc) (to assess the immigration consequences of a state conviction, the "proper inquiry is whether a particular defined offense, in the abstract, is a crime of violence under 18 U.S.C. § 16(b)").

[22]    *Moncrieffe*, 133 S.Ct. at 1685 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)).

whether, by engaging in conduct sufficient to trigger liability under a state statute, the petitioner *must have* engaged in conduct that also qualifies as an aggravated felony under federal law. Because this analysis requires "examin[ing] what the state conviction necessarily involved," courts performing such analysis must "presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized" by the state statute."[23]

This aspect of the categorical approach — that it looks to the *least* of all included offenses — is why the *Leocal* Court declined to construe the Florida DUI statute as an aggravated felony. Because it was possible to violate the statute through "negligent or merely accidental conduct," a judge would have no way of knowing — on the face of the conviction — whether physical force was used in the commission of the offense.[24] Thus, it would be inappropriate to treat the offense as a "crime of violence," because it is possible that someone could be convicted without having "use[d] physical force," as the federal definition requires.

## C.    The Modified Categorical Approach

In some settings, the Supreme Court has adopted a more flexible version of the categorical approach — the "modified categorical approach" —

---

[23]    *Id*. (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

[24]    *Leocal*, 543 U.S. at 9.

which permits courts to review the facts of a conviction, rather than analyzing its formal elements out of context.  The modified categorical approach applies exclusively to "divisible statutes" — *i.e.*, state statutes that "'refer[] to several different crimes,' not all of which qualify as [a] predicate [offense for federal purposes]," and thus require courts to "determine which crime formed the basis of the defendant's conviction."[25]  If a statute enumerates multiple *types of crimes*, courts are allowed to evaluate what happened in order to determine which crime was committed.  At the same time, however, the modified categorical approach does *not* apply to statutes that make it possible to commit the same crime in different ways.  If it is clear which crime was committed, courts are prohibited from examining the underlying facts of conviction.  In this respect, the "modified approach [] acts not as an exception [to the categorical approach], but instead as a tool" for properly applying the categorical approach "when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'"[26]

       If, for example, someone has been convicted under a state burglary statute that criminalizes both (1) breaking into cars and (2) breaking into buildings, the modified categorical approach would be appropriate to determine which

---

[25]     *Descamps v.  United States*, 133 S.Ct. 2276, 2284 (2013) (quoting *Nihjawan v.  Holder*, 557 U.S. 29, 35 (2009)).  *Accord Johnson*, 559 U.S. at 144.

[26]     *Descamps*, 133 S.Ct. at 2285 (quoting *Nihjawan*, 557 U.S. at 41).

offense — breaking into a car or breaking into a building — was the basis for the conviction.[27]   From there, however, the analysis would still proceed categorically. Once the court determines which offense sustained the conviction, the next question is whether the elements of that offense correspond, by category, to the relevant federal definition.[28]

## IV.   DISCUSSION

The Supreme Court has not spoken definitively as to whether reckless conduct can satisfy the "use of force" standard for designating state convictions as crimes of violence.  At the time of Kabenga's removal, however, the law in the Fifth Circuit was clear.  Reckless conduct was not enough to constitute use of force.  As the court explained in *United States v.  Chapa-Garza*,[29] the "'substantial risk that physical force . . . may be used' language" — from section 16(b) — "is most reasonably read to refer to intentional conduct, not an accidental, unintended

---

[27]      *See Descamps*, 133 S.Ct. at 2284 ("In *Shepard v. United States* . . . [w]e confronted a Massachusetts burglary statute covering entries into 'boats and cars' as well as buildings. . . . [Therefore] [n]o one could know, just from looking at the statute, which version of the offense [the defendant] was convicted of. Accordingly, we [] authorized sentencing courts to scrutinize a restricted set of materials . . . to determine if the defendant had pleaded guilty to entering a building or, alternatively, a car or boat.").  *See also Shepard v. United States*, 544 U.S. 13 (2005).

[28]      *See Descamps*, 133 S.Ct. at 2284 (citing *Shepard*, 544 U.S. at 25-26).

[29]      243 F.3d 921 (5th Cir. 2001).

event."[30]  In fashioning this definition, the Fifth Circuit thought it important to emphasize the difference between conduct that involves a serious risk of causing physical injury, on the one hand, and conduct that involves the use of physical force, on the other.  For example, "a drunk driver risks causing severe injury to others on the road or in the car, but in most cases he or she does not intend to use force to harm others."[31]  Similarly, the "crime of reckless endanger[ment]" — the offense at issue in *Chapa-Garza* — "necessarily involves a serious risk of physical injury to another person, but not necessarily an intent to *use force* against other persons."[32]

This conclusion tracks "the ordinary meaning of the word 'use,'"[33] which, as the Fifth Circuit further elaborated in *United States v. Vargas-Duran*,[34]

_____

[30]`    *Id.* at 926.  From this, it follows that the "use of physical force" language from section 16(a) is *also* most reasonably read to refer to intentional conduct — because the sole difference between their force requirements is that section 16(a) makes the use of force necessary, while section 16(b) makes the use of force possible.  *Accord United States v. Vargas-Duran*, 356 F.3d 598, 604-05 (5th Cir. 2004) (holding that both definitions of "crime of violence" under section 16 require that force was intentionally used).

[31]    *Chapa-Garza*, 243 F.3d at 926.

[32]    *Id.* (emphasis added).

[33]    *Id.* at 927.

[34]    356 F.3d 598 (5th Cir. 2004) (en banc).

typically "contemplates the application of something to achieve a purpose."[35]

Thus, the court concluded that "'use of force' means 'the act of employing force

for any [] purpose,' or 'to avail oneself of force,'" meaning that "the plain meaning

of the word 'use' requires intent"[36] — and the offense of "intoxication assault"

under Texas Law (in essence, a DUI) was not a crime of violence.

       *Chapa-Garza* and *Vargas-Duran* govern this case. Kabenga was

convicted under an aggravated assault statute that can be triggered by "recklessly

caus[ing] bodily injury to another" through the use of an automobile.[37] In light of

this definition, it is possible that Kabenga did no more than put his car into reverse

at an incautiously fast speed without checking to see if anyone was behind him. If

so, Kabenga would certainly have been guilty of "pay[ing] no regard to [the]

probably or possibly injurious consequences" of his conduct[38] — thereby satisfying

---

[35]    *Id.* at 603. *Accord Leocal*, 543 U.S. at 9 ("While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would 'use . . . physical force against' another when pushing him; however, we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him.").

[36]    *Vargas-Duran*, 356 F.3d at 603.

[37]    Texas Penal Code § 22.01(a)(1).

[38]    Black's Law Dictionary 1271 (6th ed. 1990) (defining "recklessness").

the traditional requirements of "recklessness" — but he would *not* have been guilty

of "us[ing] . . . physical force," as the Fifth Circuit construed that phrase in 2012.

As the court reasoned in *Chapa-Garza*:

> while [a] victim of a drunk driver may sustain physical injury
> from physical force being applied to his body as a result of
> collision with the drunk driver's errant automobile, it is clear that
> such force has not been intentionally 'used' against the other
> person by the drunk driver at all, much less in order to perpetrate
> any crime.[39]

The same could be said — word for word — of Kabenga's offense here.  Substitute

"reckless assault with an automobile" for "drunk driving," and the reasoning is

exactly on point:

> while [a] victim of [reckless assault with an automobile] may
> sustain physical injury from physical force being applied to his
> body as a result of collision with the [] driver's errant automobile,
> it is clear that such force has not been intentionally 'used' against
> the other person by the [perpetrator of reckless assault with an
> automobile] at all, much less in order to perpetrate any crime.

Under the categorical approach, this ends the inquiry.[40]  Because Kabenga's 2002

conviction could have stemmed from solely reckless conduct, it cannot constitute a

---

[39]     *Chapa-Garza*, 243 F.3d at 927.

[40]     *See Descamps*, 133 S.Ct. at 2285-86 ("Whether [the defendant] *did*
break and enter" — the predicate offense in that case "makes no difference.  And
likewise, whether he ever admitted to breaking and entering is irrelevant . . . We
know [the defendant's] crime of conviction, and it does not correspond to the
relevant [federal criteria].  Under our [] decisions, the inquiry is over.") (emphasis
in original).

crime of violence under federal law.[41]

The Government makes no effort to distinguish *Chapa-Garza* or *Vargas-Duran*.  Instead, it invokes three Fifth Circuit cases decided *after* Kabenga's removal, which, in the Government's view, set forth a different definition of "crime of violence" than the definition articulated in *Chapa-Garza* and *Vargas-Duran*.[42]

This argument fails.  Kabenga's habeas claim depends on whether his

---

[41]     Although not strictly germane to Kabenga's case, it is worth noting that *every other Circuit* has declined to treat offenses based on reckless rather than intentional conduct as "crimes of violence."  *See, e.g.*, *United States v. Fish*, 758 F.3d 1, 9-10 (1st Cir. 2014) ("Although the Supreme Court explicitly limited its reasoning to negligence-or-less crimes, *Leocal*'s rationale would seem to apply equally to crimes encompassing reckless conduct wherein force is brought to bear accidentally, rather than being actively employed. It is therefore not surprising that our sister circuits have concluded, with striking uniformity, that section 16(b) does not reach recklessness offenses."); *Jimenez–Gonzalez v. Mukasey*, 548 F.3d 557, 560 (7th Cir. 2008) ("Today we join our sister circuits and hold that reckless crimes are not crimes of violence under Section 16(b)."); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003) ("[A]n unintentional accident caused by recklessness cannot properly be said to involve a substantial risk that a defendant will use physical force . . . [because] section 16(b) contemplates only intentional conduct and 'refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force.") (internal citations and emphasis omitted).  *See also Fish*, 758 F.3d at 10 n.4 (canvassing other appellate court opinions).

[42]     *See* Government's Supplemental Memorandum of Law Addressing the Merits of Kabenga's Habeas Petition ("Supp. Mem."), at 6-9.

removal was "in accord with the law as interpreted at [the] time"[43] — *i.e.*, in 2012 — not whether the immigration authorities happened to correctly divine what the Fifth Circuit would later hold.  Furthermore, even if I were to credit this *nunc pro tunc* theory of "law . . . at [the] time," none of the cases the Government cites actually stand for the legal proposition that it must establish.  Of the three cases, one begs the question;[44] the second concerns sentencing enhancements under the Armed Career Criminal Act ("ACCA"), which incorporates a less exacting standard than section 16;[45] and the third involves a state statute that requires the violation of "a previously issued order of protection," which *itself* satisfies the

---

[43]    *Matter of Malone*, 11 I. & N. Dec. at 732.

[44]    *See United States v. Galvez-Moralex*, 538 Fed. App'x 547, 548 (5th Cir. 2013) (explicitly declining to address "whether the offense [Texas Penal Code § 22.01] committed with the lesser *mens rea* of recklessness would also qualify as a crime of violence pursuant to § 16(b)").

[45]    *See United States v. Espinoza*, 733 F.3d 568 (5th Cir. 2013). Specifically, the ACCA asks whether an offense "presents a serious potential risk of physical injury," *not* whether the offense requires the "use [] of force."  18 U.S.C. § 924(e)(2)(B).  The distinction between these two standards — and the fact that the latter is more demanding — has not been lost on courts, including the Fifth Circuit.  *See Chapa-Garza*, 243 F.3d at 926 (explaining that a crime that "necessarily involves a serious risk of physical injury to another person" does "not necessarily [involve] an intent to use force against other persons").  *See also Zivkovic v. Holder*, 724 F.3d 894, 905-06 (7th Cir. 2013) ("The standard under the ACCA [] differs materially from the one under [section 16]: the latter requires active use of physical of force, while the former looks only for potential risk of physical injury.").

-14-

*mens rea* requirement of section 16, obviating the requirement that the act of force does the same.[46]   In short, the Government's cases do not support its position. And even if they did, they were not the law of the Fifth Circuit in 2012.

      In a final effort to rescue its position, the Government argues that Kabenga's conviction should be analyzed under the *modified* categorical approach, which — according to the Government — yields a different result.  This argument is unavailing for two reasons.  *First*, when the BIA initially reviewed Kabenga's removal, it applied the categorical approach.  Therefore, to evaluate if the BIA adhered to "the law as interpreted at [the] time,"[47] the question is whether it applied the categorical approach *correctly* — not whether its result might have been justified under a different legal framework.

      *Second*, the statute under which Kabenga was convicted — section 22.02 of the Texas Penal Code — is not amenable to the modified categorical approach in the way the Government suggests.  The modified categorical approach is only proper to determine *which crime* was committed, not to evaluate the crime's

---

[46]    *United States v. Sanchez-Espinal*, 762 F.3d 425, 431-32 (5th Cir. 2014).

[47]    *Matter of Malone*, 11 I. & N. Dec. at 732.

underlying facts.  Section 22.02 penalizes a variety of things,[48] including (1) "intentionally, knowingly, or recklessly caus[ing] bodily injury to another,"[49] (2) "intentionally or knowingly threaten[ing] another with imminent bodily injury,"[50] and (3) "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."[51]  Because these three crimes are distinct, section 22.02 is, indeed, "divisible" in the sense identified by the Supreme Court. But it is divisible only among the crimes *themselves* — not among the different tiers of *mens rea* that each crime incorporates.  If the documents supporting Kabenga's removal were ambiguous among the offenses proscribed by section 22.02 — if, for example, his indictment listed a conviction under section 22.02 without providing any further detail — it would be appropriate, under the modified categorical approach, to examine the facts of his conviction to decide which offense he actually committed.  Once the correct offense is established, however, the analysis must be categorical.

---

[48]     The offenses penalized by Section 22.02 are incorporated from Section 22.01 by reference.  *See* Texas Penal Code § 22.02(a).

[49]     *Id.* § 22.01(a)(1).

[50]     *Id.* § 22.01(a)(2).

[51]     *Id.* § 22.01(a)(3).

Kabenga's conviction under section 22.02 was for "intentionally, knowingly [or] recklessly caus[ing] bodily injury to [Roa] . . . by striking and dragging [Roa] with a motor vehicle."[52]  The question is whether, in committing this offense, Kabenga necessarily "use[d] . . . physical force," as the federal definition of "crime of violence" requires.[53]  The answer — for reasons already explained — is no.  Kabenga could have perpetrated his offense recklessly, which, under Fifth Circuit precedent, would not have involved the "use of physical force." Accordingly, Kabenga's removal was improper and therefore constituted a "gross miscarriage of justice."[54]

## V.    CONCLUSION

For the foregoing reasons, Kabenga's petition for a Writ of Habeas Corpus is GRANTED, and the Government is ordered to provide Kabenga with a hearing — within thirty days — in accordance with section 1229a of the INA and

---

[52]      Bill of Indictment.  *See also* Texas Penal Code § 22.01(a)(1).

[53]      *See* 18 U.S.C. § 16.

[54]      *Matter of Malone*, 11 I. & N.  Dec. at 731-32 (Adverse status determinations that are "not in accord with the law as interpreted at [the] time" constitute a "gross miscarriage of justice" and must be treated as "legal nullit[ies]").

the Due Process Clause of the United States Constitution.[55]  The Clerk of the Court

is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             February 19, 2015

---

[55]       Under section 1252(e) of the INA, this Court lacks the power to grant
Kabenga any relief apart from such a hearing. *See* 8 U.S.C. § 1252(e)(4)(B) ("In
any case where the court determines that petitioner has demonstrated by a
preponderance of the evidence that the alien is an alien lawfully admitted for
permanent residence . . . the court may order no remedy or relief other than to
require that the petitioner be provided a hearing in accordance with section 1229a
of this title."). Contrary to the Government's assertions, however, this does not
mean that the Court lacks power "to consider whether Kabenga is a lawful
permanent resident." Supp. Mem. at 9. Rather, that is precisely what this Opinion
has considered. And the conclusion is that Kabenga *is* an LPR — at least until an
immigration judge orders otherwise — because his 2012 removal, as executed, was
a legal nullity. The Government is correct that this Court has no power to "declare
[Kabenga] an LPR" as a final matter. That decision is left to the immigration
authorities (and eventually, if need be, to a federal court exercising appellate
review over the BIA). But for the time being, Kabenga is restored to the status he
enjoyed before the 2012 removal order went into effect — that of an LPR.

## –Appearances–

**For Petitioner:**

Amy V. Meselson, Esq.
Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
(212) 577-3347

**For Respondents:**

Shane P. Cargo
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2711